| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** <br> *Caption In Compliance With D.N.J. LBR 9004-1(b)* <br><br> **DUANE MORRIS LLP** <br> Morris S. Bauer, Esq. <br> One Riverfront Plaza <br> 1037 Raymond Boulevard, Suite 1800 <br> Newark, NJ 07102-5429 <br> Telephone: (973) 424-2037 <br> E-mail: msbauer@duanemorris.com <br><br> *Counsel for Fulton Bank, N.A.* | |
| In Re: <br><br> **VARUN MALIK**, <br><br>       Debtor. | Chapter 7 <br><br> Case No. 22-11708 CMG |
| **FULTON BANK, N.A.**, <br><br>       Plaintiff, <br><br>    v. <br><br> **VARUN MALIK**, <br><br>       Defendant. | Adv. Pro. _____ <br><br> Judge: Hon. Christine M. Gravelle |

## COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF CERTAIN DEBTS AND ELIGIBLITY OF THE DEBTOR FOR A GENERAL DISCHARGE

Fulton Bank, N.A. (Fulton Bank" or the "Plaintiff"), by and through its counsel, Duane

Morris LLP, submits this complaint (the "Complaint") against Varun Malik (the "Debtor" or the

"Defendant") to except certain debts from discharge under sections 523(a)(2)(B) and 523(a)(6) of

title 11 of the U.S. Code, 11 U.S.C. §§ 101–1527 (the "Bankruptcy Code"), and deny the

Defendant a general discharge under sections 727(a)(2–5) of the Bankruptcy Code.  In support of

this Complaint, Fulton Bank respectfully represents as follows:

## PARTIES

1.      The Plaintiff is a national association organized and existing under federal law with

a place of business at 117 West End Avenue, Somerville, New Jersey 08876

2.      The Defendant is an adult individual residing, upon information and belief, at 21

Maida Road, Edison, New Jersey 08820

## JURISDICTION AND VENUE

3.      The U.S. Bankruptcy Court for the District of New Jersey (the "Court") has

jurisdiction to hear the Complaint under 28 U.S.C. § 1334 and 1452(a).

4.      This is a core proceeding under 28 U.S.C. § 157(b)(I–J).

5.      Venue is proper before this Court under 28 U.S.C. §§ 1408–09

6.      This is an adversary proceeding brought in accordance with Rules 4004, 7001(4),

and 7001(6) of the Federal Rules of Bankruptcy Procedure (the "Rules") and sections 523(a)(2)(B)

and 523(a)(6) and 727(a)(2–5) of the Bankruptcy Code.

## FACTUAL ALLEGATIONS

**A.      Fraud Against Fulton Bank**

7.      Textile Décor USA, Inc. ("Textile Décor") is a New Jersey corporation that

maintained principal places of business at 20B Commerce Drive, Franklin Township, New Jersey

08873 and 60 B Jiffy Road, Somerset, New Jersey 08874 at all relevant times.

8.      The Plaintiff was the president and sole owner of Textile Décor at all relevant times.

9.      In early 2018, Textile Décor was in an active commercial banking and financing

relationship with Citibank, N.A. ("Citibank").

DM3\9064376.2

10.     Textile Décor had outstanding loans with Citibank totaling approximately $2,854,515.58 (collectively, the "Citibank Loan").

11.     In late 2017 through early 2018, Textile Décor—through the Defendant—and the Plaintiff engaged in discussions related to the Plaintiff refinancing the Citibank Loan and extending new credit.

12.     In December 2017, to induce the Plaintiff to refinance the Citibank Loan and extend new credit, the Defendant caused Textile Décor to provide the Plaintiff with a list of Textile Décor's then-outstanding accounts receivable (the "December 2017 AR List").

13.     The December 2017 AR List identified then-outstanding accounts receivable totaling $2,626,382.

14.     Relying on the material representations in the December 2017 AR List, the Plaintiff entered into a Loan Agreement dated March 30, 2018 (the "Loan Agreement") with Textile Décor, pursuant to which the Plaintiff issued to Textile Décor a borrowing-base line of credit in the original principal amount of $3 million (the "BBLOC") and a term loan in the original principal amount of $500,000 (the "Term Loan," and together with the BBLOC, the "Loans").

15.     Under the Loan Agreement, Textile Décor—through the Defendant—represented that "[a]ll financial information and other data supplied by Borrower to Bank . . . is true, correct and complete in all material respects as of the Closing Date, and the Borrower acknowledges that the Bank has relied upon such financial statements in its decision to make the Loan."

16.     The BBLOC is evidenced by a Borrowing Base Line of Credit Note dated March 30, 2018 (the "BBLOC Note"), as modified under a Loan Modification Agreement dated November 29, 2018 (together with the Consent of Guarantor attached thereto, the "Loan Modification Agreement").

DM3\9064376.2

17.    The Term Loan is evidenced by a Note dated March 30, 2018 (the "Term Loan Note," and together with the BBLOC Note, the "Notes," and the Notes together with the Loan Agreement, the "Loan Agreements").

18.    Textile Décor granted the Plaintiff a lien in its "personal property and assets" (the "Collateral") to secure its obligations under the Loan Agreements (the "Loan Obligations") pursuant to a Security Agreement dated March 30, 2018 (the "Security Agreement").

19.    The Defendant entered into a Guaranty Agreement dated March 30, 2018 (the "Guaranty"), pursuant to which he unconditionally guaranteed all present and future obligations of Textile Décor to the Plaintiff.

20.    The Defendant granted the Plaintiff a lien in real property located at 44 Denise Drive, Edison, New Jersey 08820 (the "Denise Drive Property") to secure his obligations under the Guaranty (the "Guaranty Obligations") pursuant to a Mortgage dated March 30, 2018 (the "Mortgage").

21.    On November 29, 2018, Textile Décor—through the Defendant—executed the Loan Modification Agreement, in which "[t]he Borrower certifi[ed] that . . . all of its representations and warranties in the Loan Documents, as amended by this Agreement, are . . . true and correct as of the date of this Agreement."

22.    The Plaintiff perfected its lien in the Denise Drive Property on October 16, 2019, by recording the Mortgage with the Office of County Clerk for Middlesex County, New Jersey, Book No. 17653, pp. 1748–53.

23.    Textile Décor was generally compliant with its reporting duties and requirements and proceeded to make the minimum monthly payments owed on both the Term Loan and the BBLOC until mid-2020.

24.     Without prior forewarning, on June 24, 2020, the Defendant contacted representatives of the Plaintiff via email to cryptically advise that Textile Décor was suffering general financial difficulties.

25.     On July 1, 2020, representatives of the Plaintiff requested a meeting with the Defendant to review the situation, obtain details and a full understanding of the issues, and formulate a plan for the parties to work together toward potential solutions.

26.     However, despite his prior alleged concerns, the Defendant never responded to the request.

27.     Shortly thereafter, Textile Décor failed to file its monthly Borrowing Base Certificate for the month of August 2020 as required by the Loan Agreements.

28.     Textile Décor subsequently failed to provide its required monthly Borrowing Base Certificate for the month of September 2020 as required by the Loan Agreements.

29.     On October 6, 2020, representatives of the Plaintiff contacted Textile Décor regarding the state of the business and the past-due reporting requirements.

30.     Later that same day, representatives of Plaintiff received an email from Joanna Spencer of Textile Décor, ambiguously stating that the Defendant was currently "traveling" and would supposedly contact the Plaintiff when he returned.

31.     On October 7, 2020, Textile Décor provided its August 2020 Borrowing Base Certificate, more than a month late and lacking crucial details regarding inventory date of purchase, inventory country of origin, and inventory location.

32.     The August 2020 Borrowing Base Certificate indicated that as of August 31, 2020, Textile Décor had accounts receivable totaling $2,947,534 as well as inventory with a total value of $2,289,154.00 available as Collateral.

DM3\9064376.2

33.     At the close of October 2020, Textile Décor failed to remit the monthly payment it owed under the Term Loan and thereafter failed to remit the payments it owed under both the Term Loan and the BBLOC in November 2020 and December 2020.

34.     Textile Décor also failed to provide its required Borrowing Base Certificates for the months of October–December 2020.

35.     Throughout the period of early October 2020 through early January 2021, Saleena Miller, Vice President in the Special Assets Department of the Plaintiff, made numerous attempts to communicate with Textile Décor and the Defendant to discuss the reporting deficiencies, past-due payments, and the Plaintiff's desire to conduct an inventory and accounts receivable audit. These efforts were met with silence other than the following responses:

    a.    At 8:28 p.m. on November 30, 2020, the Defendant advised Ms. Miller the following by email: "Sorry for the delayed response. I am currently traveling. You may email me and I shall respond when I am able."

    b.    On January 2, 2021, the Defendant again made contact by e-mail, offering the fact that he was still "travelling" as an explanation for his "delayed response," indicating that the COVID-19 situation had made it difficult to operate the business, and simply stating that he "[h]ope[d] you will understand our situation."

36.     On January 8, 2021, the Plaintiff issued a Notice of Default and Demand for Full Payment to the Defendant (the "Default Notice"), notifying him of Textile Décor's defaults under the Loan Agreements and demanding payment in full of the Guaranteed Obligations.

37.     Ms. Miller repeatedly attempted to contact the Defendant after issuing the Default Notice.

38.     On Sunday, January 24, 2021, at 3:45 a.m., the Defendant left a voicemail for Ms. Miller in which he reiterated that he was "traveling" but otherwise failed to address any of the outstanding concerns raised in her prior attempts to reach him.

DM3\9064376.2

39.    On the morning of January 25, 2021, the Defendant emailed Ms. Miller the following:

As I have indicated in my many previous emails, that I am out of town, and therefore I have not received any mails from your office.

I tried to call you yesterday and also left you a voice message. I am currently taking medical assistance and due to my current situation, I have been advised not to engage in anything that may create stress. Due to COVID 19 and economic turmoil in the US economy our business has been very adversely affected. I will try to send you some additional information soon.

I will appreciate your understanding and cooperation in these difficult times.

40.    Ms. Miller resumed her efforts to contact the Defendant after receiving this response.

41.    On February 6, 2021, the Defendant advised Ms. Miller that he was "out of town" and would not be able to travel to New Jersey "anytime soon."

42.    He further advised that Textile Décor had no representatives other than himself, stating "[t]here is no one qualified to talk to you, I do not have any representative who can discuss with you."

43.    In his email, the Defendant accused the Plaintiff of having taken "a biased" approach toward Textile Décor.

44.    The Defendant closed his email with the following:

I respectfully request you to consider my request to forgive my alleged debt as my condition makes it impossible to resume any employment anytime soon and my current and future income does not support any debt repayment. It will not be anytime soon, [sic] I will be able to travel back to New Jersey. . . . This communication is provided solely for the purposes of notifying you to communicate in writing only and does not constitute an acknowledgement of the alleged debt referenced above.

45.    On February 23, 2021, Fulton Bank filed a Verified Complaint against the Debtor and Textile Décor in the New Jersey Superior Court for Somerset County (the "State Court"),

asserting claims for replevin and breach of contract against Textile Décor and a claim for breach of contract against the Debtor (the "State Court Action").

46.    Pursuant to Section 7.4 of the Security Agreement, on March 3, 2021, the Plaintiff sent letters to fifteen (15) entities listed on Textile Décor's August 2020 Borrowing Base Certificate as account debtors, demanding that each account debtor pay such debts due to Textile Décor directly to the Plaintiff.

47.    Seven of the 15 Account Debtors (collectively, the "Purported Account Debtors") advised that they owed no debt to Textile Décor as of December 2017.

48.    Yet Textile Décor—through the Defendant—had represented to the Plaintiff that the Purported Account Debtors owed more than $1 million of the then-outstanding accounts receivable of $2,626,382 in the December 2017 AR List.

49.    Further, Textile Décor—through the Defendant—represented to the Plaintiff in the August 2020 Borrowing Base Certificate that the Purported Account Debtors owed more than $1 million of the $2,947,534.43 of the outstanding receivables owing to Textile Décor as of August 31, 2020.

50.    The Purported Account Debtors did not simply dispute the amounts owed to Textile Décor—they advised that they had not conducted, and were not conducting, business with Textile Décor during the relevant time period.[1]

51.    Upon receiving the aforementioned responses from the Purported Account Debtors, the Plaintiff reviewed each of Textile Décor's Borrowing Base Certificates from loan origination

---

[1] One Purported Account Debtor represented that it had done business with Textile Décor resulting in less than $700 received by Textile Décor over a four-year period—far less than Textile Décor had represented it was owed.

DM3\9064376.2

until the August 2020 Borrowing Base Certificate and found that Textile Décor—through the Defendant—had repeatedly misrepresented the amounts owed by the Purported Account Debtors.

52.     Upon information and belief, Textile Décor was never an operating business during the relevant time period.

53.     Throughout the life of the Loans, the Defendant executed each of the Borrowing Base Certificates submitted to the Plaintiff except for the final one in August 2020.     By executing the Borrowing Base Certificates, the Defendant certified as follows: "I affirm to the best of my knowledge and belief that the above information is a correct representation of the line of credit borrowing base and acknowledge [the Plaintiff's] reliance upon this information to make advances."   The "above information" included the falsified accounts receivable.

54.     The Plaintiff relied to its detriment on the false representations made by Textile Décor and the Defendant—which they repeatedly swore to under oath—in deciding to provide the underlying Loans and continuing to make the BBLOC available.

55.     Additionally, on March 23, 2021, the State Court issued a Writ of Replevin directing the county sheriff to collect and deliver to the Plaintiff all Collateral of Textile Décor described in the Security Agreement.

56.     The Plaintiff took possession of the Collateral but did not sell it given the pending litigation.   The Plaintiff was advised at that time that the value of the inventory was approximately $25,000, which is well below the total inventory value of $2,289,154.21 that Textile Décor reported in its August 2020 Borrowing Base Certificate.

57.     As of March 31, 2021, Textile Décor's bank account with the Plaintiff reflected a negative account balance of $556.51, which is well below the accounts receivable totaling $2,947,534.43 that Textile Décor reported in its August 2020 Borrowing Base Certificate.

DM3\9064376.2

58.     As a result, during the period subsequent to August 2020, Textile Décor—through the Defendant—either dissipated or improperly converted in excess of $5,000,000 of the Plaintiff's Collateral without making any payments to the Plaintiff or never had such accounts receivable and inventory.

59.     After discovering the scope of Textile Décor and the Defendant's misconduct, the Plaintiff amended the Verified Complaint to include the allegations summarized above and assert a fraud claim against Textile Décor and the Defendant.

60.     On March 3, 2022 (the "Petition Date"), the Defendant commenced the above-captioned bankruptcy case (the "Bankruptcy Case") by petitioning for relief under chapter 11 of the Bankruptcy Code.

61.     On April 7, 2022, the Court entered an order lifting the automatic stay pursuant to 11 U.S.C. § 362(d)(1) with respect to Fulton Bank's prosecution of the State Court Action and confirming that the stay does not extend to Textile Décor (the "Stay Relief Order").

62.     On April 19, 2022, Fulton Bank filed Claim No. 8 against the Debtor's estate in the liquidated amount of $4,026,933.42 arising from the Debtor's Guaranty Obligations plus contingent, unliquidated amounts for consequential and punitive damages on account of the fraud claim.

63.     On September 15, 2022, the Court converted the Bankruptcy Case to a proceeding under chapter 7 of the Bankruptcy Code.

**B.      Fraud Against the SBA**

64.     On April 8, 2022, the U.S. Small Business Administration (the "SBA") filed Claim No. 6 against the Defendant's bankruptcy estate for "money loaned" as a general unsecured claim in the amount of $2,026,799.65.

DM3\9064376.2

65.     On June 8, 2022, after discovering the fraud perpetrated by the Defendant on the SBA, the SBA amended Claim No. 6 to preserve its rights under the False Claims Act, the Program Civil Remedies Act, the Financial Institution Recovery and Enforcement Act of 1989 (collectively, Claim No. 6 and its amended are referred to as the "SBA Claim").

66.     Attached to the SBA Claim are loan documents and loan applications showing that the debt arises from the Defendant's personal guarantee of Economic Injury Disaster Loans in the aggregate amount of $2,000,000 (the "EIDLs") issued to and secured by assets of Textile Décor and a Paycheck Protection Program loan (the "PPP Loan") issued to Textile Décor and forgiven in the amount of $187,500, which forgiveness was based in part on application of the funds to employee payroll obligations that included purported wage payments to the Debtor's wife, Swati Bhatheja.

67.     At the telephonic meeting of creditors conducted pursuant to 11 U.S.C. § 341(a) (the "341 Meeting") on March 31, 2022, the Defendant repeated, "I'll have to check and get back to you," when asked whether his wife had worked for Textile Décor.

68.     At his partial Rule 2004 exam conducted on June 23, 2022 (the "First Rule 2004 Exam"), the Debtor testified that he could only recall his wife having worked at HN International Group, Inc. ("HN International"), a textile business owned by his brother, Nagesh Malik.

69.     The PPP Loan application asserts that Ms. Bhatheja and another individual, Manjot Kaur, both worked for Textile Décor as well as HN International.

70.     Upon information and belief, Ms. Kaur is likely the wife of Nagesh Malik.

71.     On July 19, 2022, Ms. Bhatheja certified to the Court that she worked part time for Textile Décor most recently in 2020.

DM3\9064376.2

72.     Accordingly, the Defendant failed to disclose Ms. Bhateja's employment by Textile Décor—his solely owned business—at the First Rule 2004 Exam and the 341 Meeting.

73.     At the 341 Meeting, the Defendant also testified that Textile Décor has had no income or operations since February 2021.  The Defendant previously certified the same on March 12, 2021, in the State Court Action.

74.     However, Textile Décor applied for the bulk of its EIDL disbursements—$1.85 million out of $2 million—after February 2021.  The SBA approved such applications and remitted such sums as instructed by the Defendant.

## C.     Concealment of Bank Accounts and Assets

75.     On May 27, 2022, the Court ordered the Defendant, *inter alia*, to produce all his bank statements from 2018–22 to the Plaintiff within two weeks and to appear for a Rule 2004 exam by the Plaintiff within four weeks (the "May 27 Order").

76.     The Court further ordered that the first four hours of the Rule 2004 exam must be in person with an additional four hours remote.

77.     The Defendant appeared for the First Rule 2004 Exam on June 23, 2022.  The Defendant provided approximately 30 minutes of testimony to the Plaintiff before representing that he had received an email notice that he tested positive for COVID-19.  The parties stopped the exam as a result.

78.     On July 5, 2022, Fulton Bank filed a motion to compel, *inter alia*, the Defendant to attend a continued Rule 2004 exam and produce missing bank statements (the "Motion to Compel").

79.      On the same day, PNC Bank, N.A. ("PNC Bank") produced records in response to a subpoena issued by the Plaintiff on June 2, 2022 on notice to the Defendant's counsel, which

records show that the Defendant closed six personal PNC Bank accounts (the "<u>PNC Bank Accounts</u>") shortly before the Petition Date.

80.     The records also show international wire transfers to a personal Union Bank of India ("<u>UB India</u>") account ending in 2174 (the "<u>UB India Account</u>").

81.     The Defendant voluntarily appeared for a continued Rule 2004 exam on July 27, 2022 (the "Continued Rule 2004 Exam"), at which the Defendant responded to the Plaintiff's questions regarding the PNC Bank production.

82.     The PNC Bank statements show that the Defendant withdrew or redirected the EIDL proceeds to and from his personal PNC Bank Accounts and ultimately to a personal UB India Account as follows:

a.     a. On July 27, 2020, Textile Décor received the initial EIDL disbursement of $149,900 from "SBAD TREAS" into its account ending in 2848 at TD Bank, N.A. ("<u>TD Bank Account</u>").

b.     On July 29, 2020, Textile Décor withdrew $144,096.40 from the TD Bank Account by check.

c.     On August 8, 2020, $144,096.40 was deposited into the Debtor's personal PNC Bank account ending in 1898 (the "<u>1898 PNC Personal Account</u>").

d.     On March 12, 2021, the Defendant certified in the State Court Action that Textile Décor had stopped operating in February 2021.

e.     On August 16, 2021, the Defendant increased the EIDL to $500,000 and replaced the TD Bank Account with the 1898 PNC Personal Account to receive disbursements.

f.     On August 20, 2021, the 1898 PNC Personal Account received a $350,000 deposit from "Sbad Treas."

g.     On December 16, 2021, the Defendant increased the EIDL to $2 million.

h.     On December 23, 2021, the 1898 PNC Personal Account received a $1.5 million deposit from "Sbad Treas."

i.     On December 29, 2021, the Defendant withdrew $496,754.98 from the 1898 PNC Personal Account via "withdrawal ticket."

j.      From February 2–15, 2022, a total of $1,099,864.04 was deposited into the Defendant's personal PNC Bank account ending in 5835 (the "5835 PNC Personal Account").

k.      From February 14–17, 2022, funds totaling $1,099,798.50 were wire transferred to the Defendant's UB India Account.

83.     The Defendant neither disclosed these accounts and these transfers in his Statement of Financial Affairs nor produced the underlying statements as required by the May 27 Order.

84.     At the Continued Rule 2004 Exam, the Defendant acknowledged each of the PNC Personal Accounts and the UB India Account and admitted that he did not include these accounts or the transfers of monies on his Schedules of Assets and Liabilities and Statement of Financial Affairs.

85.     At the Continued Rule 2004 Exam, the Defendant repeatedly asserted that he would produce documents demonstrating that the EIDL proceeds were used to pay business debts of Textile Décor.

86.     On August 29, 2022, the Court entered a further order providing as follows in paragraph 9:

> The Debtor shall provide to Fulton Bank on or before September 1, 2022 copies of his Union Bank of India Bank Statements for the years 2018 to the present or Bank Statements associated with bank account number 2174 at the Union Bank of India or in the alternative, a certification stating the reason that the Bank Statements cannot be produced along with the Union Bank of India contact person name, address and telephone number.

87.     On September 6, 2022, the Defendant filed a certification in which he stated as follows:

> Upon the advice of counsel, I invoke my rights pursuant to the Fifth Amendment of the U.S. Constitution, and thus will not be providing discovery and/or documents in response to paragraph 9 of the discovery order, ECF 158.

## COUNT I
## NONDISCHARGEABILITY OF DEBT OWED TO FULTON BANK
### UNDER 11 U.S.C. § 523(a)(2)(A)

88.    The Plaintiff re-alleges and incorporates paragraphs 1–87 of the Complaint as if fully set forth herein.

89.    Textile Décor, through its principal—the Defendant—fraudulently obtained money and an extension of credit from the Plaintiff by materially misrepresenting the existence and operation of Textile Décor's business.

90.    The Defendant converted or materially misrepresented the existence of the Collateral and converted the Loan proceeds for personal use.

91.    The Defendant obtained money and an extension of credit from the Plaintiff by false pretenses, a false representation, or actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

92.    The debt owed by the Defendant to the Plaintiff should be excepted from the Defendant's discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, the Plaintiff respectfully requests the entry of an order (a) finding that the debt owed by the Defendant to the Plaintiff is not dischargeable in bankruptcy; (b) rendering judgment in favor of the Plaintiff in the amount of the debt owed by the Defendant to the Plaintiff plus interest and attorney's fees; and (c) granting the Plaintiff such other and further relief as is just and appropriate.

## COUNT II
## NONDISCHARGEABILITY OF DEBT OWED TO FULTON BANK
### UNDER 11 U.S.C. § 523(a)(2)(B)

93.    The Plaintiff re-alleges and incorporates paragraphs 1–92 of the Complaint as if fully set forth herein.

DM3\9064376.2

94.     Textile Décor is an insider within the meaning of 11 U.S.C. §§ 101(31)(iv).

95.     Prior to the Plaintiff's entry into the Loan Agreements, from the delivery of the December 2017 AR List through and including the delivery of the August 2020 Borrowing Base Certificate to the Plaintiff, Textile Décor, through its principal—the Defendant— repeatedly misrepresented the accounts receivable due and owing from its account debtors.

96.     The total amount of accounts receivable due and owing from Textile Décor's account debtors was material information upon which the Plaintiff relied in entering into the Loan Agreements, providing the Term Loan and BBLOC, and continuing to make the BBLOC available to Textile Décor.

97.     At all times relevant hereto, the Defendant and Textile Décor had full knowledge that their representations to the Plaintiff were false because Textile Décor had not conducted business with the Purported Account Debtors for many years, but the Defendant nonetheless caused Textile Décor to represent in the December 2017 AR List, the August 2020 Borrowing Base Certificate, and in false business records for years prior that the Purported Account Debtors owed monies to Textile Décor.

98.     The Defendant and Textile Décor intended the Plaintiff to rely on their misrepresentations and falsified Textile Décor's business records to induce the Plaintiff to provide the subject Loans and to ensure that the Plaintiff would continue to make the BBLOC available to Textile Décor.

99.     The Plaintiff relied on the false business records, including the December 2017 AR List and the Borrowing Base Certificates, because the Defendant repeatedly swore to the veracity of the information provided therein under oath.

100.     The Defendant's debt owed to the Plaintiff arises from the Defendant's submission of materially false written statements concerning Textile Décor's financial condition with intent to deceive and on which the Plaintiff relied within the meaning of 11 U.S.C. § 523(a)(2)(B).

101.     The debt owed by the Defendant to the Plaintiff should be excepted from the Defendant's discharge pursuant to 11 U.S.C. § 523(a)(2)(B).

WHEREFORE, the Plaintiff respectfully requests the entry of an order (a) finding that the debt owed by the Defendant to the Plaintiff is not dischargeable in bankruptcy; (b) rendering judgment in favor of the Plaintiff in the amount of the debt owed by the Defendant to the Plaintiff plus interest and attorney's fees; and (c) granting the Plaintiff such other and further relief as is just and appropriate.

## COUNT III
## NONDISCHARGEABILITY OF DEBT OWED TO FULTON BANK
## <u>UNDER 11 U.S.C. § 523(a)(4)</u>

102.     The Plaintiff re-alleges and incorporates paragraphs 1–101 of the Complaint as if fully set forth herein.

103.     The Defendant converted or materially misrepresented the existence of the Collateral and converted the Loan proceeds for personal use.

104.     The Debtor committed fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny within the meaning of 11 U.S.C. § 523(a)(2)(4).

105.     The debt owed by the Defendant to the Plaintiff should be excepted from the Defendant's discharge pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, the Plaintiff respectfully requests the entry of an order (a) finding that the debt owed by the Defendant to the Plaintiff is not dischargeable in bankruptcy; (b) rendering judgment in favor of the Plaintiff in the amount of the debt owed by the Defendant to the Plaintiff

DM3\9064376.2

plus interest and attorney's fees; and (c) granting the Plaintiff such other and further relief as is just and appropriate.

### COUNT IV
### TO DETERMINE DISCHARGEABILITY OF DEBT OWED TO FULTON BANK
### UNDER 11 U.S.C. § 523(a)(6)

106.    The Plaintiff re-alleges and incorporates paragraphs 1–105 of the Complaint as if fully set forth herein.

107.    By intending the Plaintiff to rely on misrepresentations and falsifying Textile Décor's business records to induce the Plaintiff to provide the subject Loans and to ensure that the Plaintiff would continue to make the BBLOC available to Textile Décor, the Defendant incurred the debt owed to the Plaintiff through willful and malicious injury to the Plaintiff within the meaning of 11 U.S.C. § 523(a)(6).

108.    The debt owed by the Defendant to the Plaintiff should be excepted from the Debtor's bankruptcy discharge pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, the Plaintiff respectfully requests the entry of an order (a) finding that the debt owed by the Defendant to the Plaintiff is not dischargeable in bankruptcy; (b) rendering judgment in favor of the Plaintiff in the amount of the debt owed by the Defendant to the Plaintiff plus interest and attorney's fees; and (c) granting the Plaintiff such other and further relief as is just and appropriate.

### COUNT V
### TO DETERMINE DISCHARGEABILITY OF DEBT OWED TO FULTON BANK
### UNDER 11 U.S.C. § 523(a)(6)

109.    The Plaintiff re-alleges and incorporates paragraphs 1–108 of the Complaint as if fully set forth herein.

DM3\9064376.2

110.    By intending the Plaintiff to rely on misrepresentations and falsifying Textile Décor's business records to induce the Plaintiff to provide the subject Loans and to ensure that the Plaintiff would continue to make the BBLOC available to Textile Décor, the Defendant incurred the debt owed to the Plaintiff through willful and malicious injury to the Plaintiff within the meaning of 11 U.S.C. § 523(a)(6).

111.    The debt owed by the Defendant to the Plaintiff should be excepted from the Debtor's bankruptcy discharge pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, the Plaintiff respectfully requests the entry of an order (a) finding that the debt owed by the Defendant to the Plaintiff is not dischargeable in bankruptcy; (b) rendering judgment in favor of the Plaintiff in the amount of the debt owed by the Defendant to the Plaintiff plus interest and attorney's fees; and (c) granting the Plaintiff such other and further relief as is just and appropriate.

**COUNT VI**
**TO DETERMINE DISCHARGEABILITY OF DEBTS**
**UNDER 11 U.S.C. § 727(a)(2)**

112.    The Plaintiff re-alleges and incorporates paragraphs 1–111 of the Complaint as if fully set forth herein.

113.    Within one year before the Petition Date, the Defendant transferred over $1 million in EIDL proceeds first to his personal PNC Bank Accounts and then to his personal UB India Account with intent to hinder, delay, or defraud a creditor of the estate within the meaning of 11 U.S.C. § 727(a)(2).

114.    Within one year before the Petition Date, the Defendant withdrew and dissipated or concealed $496,754.98 in EIDL proceeds from his 1898 PNC Personal Account with intent to hinder, delay, or defraud a creditor of the estate within the meaning of 11 U.S.C. § 727(a)(2).

DM3\9064376.2

115.    The Defendant is ineligible for a bankruptcy discharge of any debts pursuant to 11 U.S.C. § 727(a)(2).

WHEREFORE, the Plaintiff respectfully requests the entry of an order (a) finding that the Defendant is ineligible for the bankruptcy discharge of any debts; and (b) granting the Plaintiff such other and further relief as is just and appropriate.

## COUNT VII
## TO DETERMINE DISCHARGEABILITY OF DEBTS
## UNDER 11 U.S.C. § 727(a)(3)

116.    The Plaintiff re-alleges and incorporates paragraphs 1–115 of the Complaint as if fully set forth herein.

117.    The Defendant failed to produce records identifying the ultimate disposition of the Collateral and the EIDL proceeds as well as his PNC Bank Account statements and UB India Account statements.

118.    The Defendant concealed, falsified, or failed to keep or preserve records from which his financial condition or business transactions might be ascertained within the meaning of 11 U.S.C. § 727(a)(3).

119.    The Defendant is ineligible for a bankruptcy discharge of any debts pursuant to 11 U.S.C. § 727(a)(3).

WHEREFORE, the Plaintiff respectfully requests the entry of an order (a) finding that the Defendant is ineligible for the bankruptcy discharge of any debts; and (b) granting the Plaintiff such other and further relief as is just and appropriate.

DM3\9064376.2

## COUNT VIII
## TO DETERMINE DISCHARGEABILITY OF DEBTS
## UNDER 11 U.S.C. § 727(a)(4)(A)

120.     The Plaintiff re-alleges and incorporates paragraphs 1–119 of the Complaint as if fully set forth herein.

121.     The Defendant failed to disclose the EIDL proceed transfers, PNC Bank Accounts, or UB India Account in his Statement of Financial Affairs.

122.     The Defendant knowingly and fraudulently made a false oath in connection with the Bankruptcy Case by failing to disclose these transfers and accounts in his Statement of Financial Affairs under penalty of perjury within the meaning of 11 U.S.C. § 727(a)(4)(A).

123.     The Defendant also knowingly and fraudulently made a false oath by failing to disclose Ms. Bhateja's employment by Textile Décor at the 341 Meeting and the First Rule 2004 Exam within the meaning of 11 U.S.C. § 727(a)(4).

124.     The Defendant is ineligible for a bankruptcy discharge of any debts pursuant to 11 U.S.C. § 727(a)(4)(A).

WHEREFORE, the Plaintiff respectfully requests the entry of an order (a) finding that the Defendant is ineligible for the bankruptcy discharge of any debts; and (b) granting the Plaintiff such other and further relief as is just and appropriate.

## COUNT IX
## TO DETERMINE DISCHARGEABILITY OF DEBTS
## UNDER 11 U.S.C. § 727(a)(5)

125.     The Plaintiff re-alleges and incorporates paragraphs 1–124 of the Complaint as if fully set forth herein.

126.     The Defendant failed to explain satisfactorily the loss of the Collateral and the EIDL proceeds within the meaning of 11 U.S.C. § 727(a)(5).

127.    The Defendant is ineligible for a bankruptcy discharge of any debts pursuant to 11

U.S.C. § 727(a)(5).

WHEREFORE, the Plaintiff respectfully requests the entry of an order (a) finding that the

Defendant is ineligible for the bankruptcy discharge of any debts; and (b) granting the Plaintiff

such other and further relief as is just and appropriate.


Respectfully Submitted,

**DUANE MORRIS LLP**
Attorneys for Fulton Bank, N.A.

By: _/s/ Morris S. Bauer_____
        Morris S. Bauer, Esq.

Dated: September 30, 2022

DM3\9064376.2